UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**LINZELL JONES #103982**          **CASE NO. 3:21-CV-01338 SEC P**

**VERSUS**          **JUDGE TERRY A. DOUGHTY**

**DARREL VANNOY**          **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Linzell Jones ("Jones"), an inmate in the custody of the Allen Correctional Center proceeding pro se, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 on May 19, 2021. [doc. 1]. Jones attacks his aggravated arson conviction, and the resulting sentences imposed by the Fourth Judicial District Court for the Parish of Ouachita.[1] For the reasons assigned below, the undersigned recommends that the Court deny Jones's claims and dismiss his petition.

### I. BACKGROUND FACTS

The Louisiana Court of Appeal for the Second Circuit recounted the underlying state court procedural history as follows:

> In the early morning hours of April 6, 2016, the City of Monroe Fire Department and Police Department responded to a fire at 105 Vegas Drive, the home of Tayran Jones, Jones's now ex-wife. After investigating the fire, which originated in the carport, police arrested Jones. Jones was charged by amended bill of information with aggravated arson. A sanity commission was appointed to determine Jones's mental condition at the time of the offense, as well as his present mental capacity to proceed. On March 28, 2018, based on the reports, the trial court found that Jones was competent to stand trial.
>
> Taryn testified that she married Jones in 2009, and they lived in her home at 105 Vegas Drive. Tayran stated that she acquired the house in 1989, and owned a green 1999 Nissan Quest van since at least 2006. Tayran testified that they were having marital

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

problems at the time of the trial. She stated that Jones started drinking alcohol and would be extremely nice to her in front of others, but would become erratic behind closed doors. She testified that in 2014, she started recording Jones so he could hear how he sounded when he was drinking. On October 25, 2015, Tayran recorded one of Jones's rants, which was played for the jury. In the recording, Jones stated that he would "burn down all these s** of b****** house around all these homes even this house right here . . . I'll burn this m***** f***** down."

Tayran testified that on March 9, 2016, her house flooded. She stated that around March 28, 2016, her insurer was prepared to pay her money to repair the residence and she was talking with a contractor. However, Jones was angry because he wanted her to let him do the work. She testified that as a result of the flood, she had to gut the house and many of the contents of the house and furniture were put under the carport. Tayran stated that she put books inside the van. The van was having mechanical issues, and the rear of the van was parked partially under the carport, with the van facing the street. She stated that she had removed the tags from the van because Jones started drinking and she did not want him driving it, and that made Jones angry.

Tayran testified that on the night of the fire, her seven-year-old grandson was spending the night at her house. Tayran stated that around midnight, Jones had been outside when she heard three loud "pop" sounds. She testified that she heard the first "pop" around 9:00 p.m., she went outside looking for Jones. She stated that she discovered Jones had lit the grill in the backyard, and was burning old documents. She said she heard the second "pop" shortly after she took a picture of her grandson sleeping in a bedroom, around 11:50 p.m. She testified that she looked out the window and saw Jones near the rear of the van walking under the carport, but she did not see a fire at that time. She stated that Jones came inside her house and asked her about cucumbers, and she told him that they were on the table. She stated that Jones walked outside, but came back inside and asked about the cucumbers two more times. Tayran testified that she then heard the third "pop" shortly after midnight, looked out the window, and saw a fire inside the rear section of the van.

Taryn testified that she panicked because she thought the van was going to explode. She yelled for Jones, he came walking from the back, and she told him the van was on fire. She stated that she grabbed her phone, purse, and work bag; scooped up her grandson; and ran outside to the neighbor's house. She testified that she called 911 and moved her other vehicle, which was parked near the van, to her neighbor's house. Tayran stated that she then grabbed the neighbor's water hose and started spraying water toward the van, but stopped when she heard another loud "boom." She said the fire consumed the inside of the van, and started coming up above the van. She testified that at one point, she saw Jones in the yard with a bucket, throwing water or some liquid substance at the fire. She stated that she did not see him again until the fire was out.

Cecil Jeselink, a district fire chief for the City of Monroe Fire Department, testified that when he arrived at the scene, the firefighters were already spraying water on the van and working their way toward the house through the carport area. He stated that the first responding crew ensured that everyone was out of the house. He stated that they were working on the fire, a then-unidentified man walked into the yard from the street. He

2

testified that the man, later identified as Jones, grabbed a fire hose, pulled on it, and hollered, "Don't put that out." Chief Jeselink stated that he told Jones to put the hose down and come over by him. He testified that Jones introduced himself as the archbishop of Louisiana. He noted that if the windows on a car are up when the car is on fire, it will cause a loud popping sound when the windows burst.

Officer Tim Crum of the City of Monroe Police Department testified that he responded to the fire. He stated that the fire department advised him that Jones was getting too close to the scene, so he put Jones in his unit. Officer Crum testified that based on a conversation with Jones's wife, he considered Jones to be a suspect in the fire. Officer Crum stated that although he could smell a moderate odor of alcohol on Jones, Jones was able to understand him and he could understand Jones. Officer Crum testified that he advised Jones of his Miranda rights, and Jones told him that he (Jones) had been working on a lawnmower that was flipped upside down near the carport. He stated that Jones said that as he was working on the lawnmower, he lit a barbeque grill, which was under the carport, and that the fire in the grill must have ignited the gasoline from the overturned mower, which then traveled toward the van, and caught fire. Officer Crum stated that he confirmed there was an overturned lawnmower and grill near the carport, but stated that there was no evidence that any fire was started in those grills. He noted that there was also a grill in the backyard, which was burning something.

David Hill, Chief Arson Investigator for the City of Monroe Fire Department, was accepted by the trial court as an expert in arson investigation, including origin and cause. Investigator Hill stated he was called to investigate the fire and determine the cause of the fire. He testified that he determined that the origin of the fire was inside the rear section of the van. In reviewing photos he took of the damage to the van, he explained that the rear seats were totally consumed, meaning that is the area that burned the longest and the hottest. Investigator Hill testified that the fire started on the rear seats with an introduced ignition source, such as a lighter, match, or something with an open flame. He stated that the back passenger door on the driver's side of the van was open. He explained that it is not necessary to use an accelerant because as long as there is air and something to burn, the fire will continue to slowly grow. Investigator Hill testified that the fire burned inside the passenger compartment of the van, left the van, caught the easement of the carport on fire, and then traveled along the carport until it entered the attic of the house. He also testified that there was no evidence of an engine fire, spontaneous combustion, or a lightning strike.

Investigator Hill stated that when he talked to Jones, Jones told him that he had lit a barbeque grill that was near the van and that apparently an ember had flown over and caught the van on fire. Investigator Hill stated that although there were two grills near the carport on the passenger side of the van, one flipped upside down and one upright, there was no evidence of a recent fire having burned in either of them, so he was able to rule out those grills as a cause of the fire. He stated that there was a grill in the backyard near a storage shed, where papers were being burned, but that grill had nothing to do with the fire. Investigator Hill testified that there were several spots in the backyard that had been set on fire, and that Tayran told him that Jones was wandering around the backyard acting intoxicated, "talking out of his head," and setting fires. He stated that as part of his investigation, he reviewed the weather report for the night of the fire; there was a light

3

> wind blowing from the southeast. He explained that the house faced southeast, so any ember from the lit grill would have blown away from the van. He also testified that an open flame would have been required to start this fire, not an ember.
>
> In response to Jones's suggestion that a fire started when a spark ignited gasoline from an overturned lawnmower, Investigator Hill stated that the driveway slopes down away from the carport toward the road, so any gasoline would not have flowed toward the van. He also explained that there was no evidence of any burns or damage to the lawnmowers nor was there any evidence that the fire started under the van. He also testified that for these reasons, he concluded that the lawnmowers had nothing to do with the fire. Chief Hill stated that when he told Jones that his story could not be true, Jones became irate, told him that he was the Archbishop of Louisiana, and said that the police arrested him so they could get with his wife. Investigator Hill stated that Jones appeared to be intoxicated or on some illicit drug.
>
> Numerous photos of the van and house were presented at trial. The photos depict the interior of the van as burned down to the metal frame, the windows and the seats gone, and all of the paint on the rear half of the van gone. The pictures show that the front exterior of the van did not sustain as much damage as the tires were intact. The pictures of the house depict the carport awning, posts, all of the contents of the house under the carport, and the exterior and interior wall of the house as damaged. There are photos of the two lawnmowers and two grills on the passenger side of the van, under and near the carport area, which do not have any fire damage. Also, the photos show, as explained by Chief Hill, that the radiant heat from the fire damaged the neighbor's house, cracking a window and the vinyl siding.
>
> On May 9, 2018, the jury unanimously found Jones guilty as charged of aggravated arson. Jones filed a pro se motion for new trial, arguing that his trial attorney was ineffective in failing to establish a proper defense. The trial court denied the motion. On August 2, 2018, the trial court sentenced Jones to 20 years' imprisonment at hard labor, with the first 2 years to be served without the benefit of parole, probation, or suspension of sentence. No motion to reconsider sentence was filed.

*State v. Jones*, 273 So.3d 585, 588-91 (La. App. 2 Cir. 2019).

On February 18, 2020, Jones filed an application for post-conviction relief in state district court, which was ultimately denied. [doc. 1, p. 12]. On November 2, 2020, after receiving several extensions for filing due to the Covid-19 pandemic, Jones filed a supervisory writ with the Louisiana Court of Appeal for the Second Circuit, which the court denied on December 17, 2020. *Id.* at 12-13. Jones then filed a writ of certiorari with the Louisiana Supreme Court, which was denied on April 13, 2021. *Id.* at 13.

Jones filed the instant petition on May 19, 2021, arguing that three of the state court's findings were based on an unreasonable determination of the facts in light of the evidence: (1) the evidence presented at trial was not sufficient to show that Jones committed the offense, or that the offense constituted aggravated arson; (2) the trial court's determination that a contradictory hearing was not necessary was unreasonable; and (3) Jones would not have been convicted but-for ineffective assistance of counsel.  [doc. 1-1, p. 15].

## II.   STANDARD OF REVIEW

Habeas corpus relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  Under 28 U.S.C. § 2254(d), the court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established federal law "'if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially distinguishable facts.'"  *Williams v. Taylor*, 529 U.S. 362, 413 (2000*); see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  An "unreasonable application" of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "The focus of the latter

5

inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable." *See Bell v. Cone*, 525 U.S. 685, 694 (1999) ("[W]e stressed in Williams that an unreasonable application is different from an incorrect one.").

Title 28, United States Code, Section 2254(d)(2) also allows for habeas relief if the state court's decision "was based on an unreasonable determination of the facts" in light of the record before it. The federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference." *Id.* at 314. However, the petitioner may overcome the presumption of correctness "by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

### III. ANALYSIS

#### A. *Insufficient Evidence to Show Jones Committed the Offense or that the Offense Constituted Aggravated Arson*

In his first claim, Jones argues that there was insufficient evidence to prove that he was guilty beyond a reasonable doubt and that there was insufficient evidence to prove that his conduct constituted aggravated arson.[2] [doc. 1-3, p. 27]. Specifically, Jones claims that because there were no eye-witnesses that saw him set fire to the van, the State's evidence was circumstantial and insufficient.[3] [doc. 1-1, p. 17]. Jones also appears to argue that his actions

---

[2] Under Louisiana law, "[a]ggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered."

[3] Jones claims that under Louisiana law, if circumstantial evidence is used to support a conviction, "it must exclude every reasonable hypothesis of innocence," and offers the possibility that his now ex-wife set the fire. La. R.S. § 15:438 (2005); [doc. 1-1, p. 15]. He

6

could not have constituted aggravated arson because his mental state was compromised on the day of the fire. *Id.* at 19.

When a habeas corpus petitioner claims that the evidence presented was insufficient to warrant a conviction, the inquiry is not whether the federal court "believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson v. Va.*, 443 U.S. 307, 318 (1979) (quoting *Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276, 282 (1979)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, this analysis allows the Court to "find sufficient evidence to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

There was sufficient evidence for the trial court to find Jones guilty of aggravated arson beyond a reasonable doubt. Jones claimed that, before the fire, he had been working on a lawnmower near the carport and when he lit the barbecue grill underneath the carport, an ember from the grill landed on gasoline from the lawnmower, which traveled to the van and ignited it. [doc. 8, p. 8]. Investigator Hill testified that this scenario could not have happened for several

---

offers the possibility that his now ex-wife set the fire. "However, to the extent that this statute imposes a heavier burden than *Jackson*, we need not consider it on the federal habeas review." *Williams v. Cain*, 408 Fed. App'x 817, 821 (5th Cir. 2011) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990) ("[I]n challenges to state convictions under 28 U.S.C. § 2254, only Jackson need be satisfied, even if state law would impose a more demanding standard of proof.")). Accordingly, this Court need not address this argument.

reasons. Investigator Hill explained that there was no evidence of recent fire in the grills beneath the carport, nor had the lawnmower been burned. *Id.* at 9. He also noted that the Jones's driveway slopes away from the carport, indicating that any gasoline that may have leaked from the lawnmower would have gone towards the road and away from the carport. *Id.* Investigator Hill also testified that an open flame, not an ember, would have been required to start the fire, and, even if an ember could have started the fire, any ember would have blown away from the van due to the direction of the wind on the day of the fire. *Id.* In addition to Investigator Hill's testimony, Jones's ex-wife testified that before the fire, Jones had been outside near the van and that Jones had previously threatened to burn down houses in their neighborhood. *Id.* at 7. A recording of one of these declarations, in which Jones claimed that he would burn down houses in their neighborhood, including their own, was played for the jury. *Id.*

There is also sufficient evidence to find that it was foreseeable that the fire might endanger human life. While it is true that Jones set fire to the van and not the house, the van was beneath a carport attached to the home, making it entirely reasonable that the fire could have spread to the house. Moreover, Jones was going in and out of the home that evening and knew his ex-wife and her grandson were inside. Although Jones claims that his mental status was compromised on the day of the fire, evidence presented to explain Jones's behavior apparently persuaded the jury that Jones's mental status was not compromised that day. Specifically, Investigator Hill claimed that when speaking with Jones, he smelled alcohol on his breath and that Jones's behavior only became erratic after Investigator Hill told Jones that his story of how the fire started could not be true. [doc. 8-5, p. 41]. Accordingly, the evidence was sufficient to show that it was foreseeable that the fire might endanger human life.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to find beyond a reasonable doubt that Jones lit the fire and that the fire could endanger human life. Accordingly, it is recommended that Jones's first claim for relief be denied.

### B. Need for a Contradictory Hearing

In his second claim, Jones contends that he is entitled to relief because the trial court erred in failing to order a contradictory hearing after the sanity commission evaluated whether Jones was competent to stand trial. [doc. 1-1, p. 22].

When a defendant shows by a preponderance of the evidence that there are reasonable grounds to call into question his competency, the court must appoint a sanity commission. *State v. Bridgewater*, 823 So.2d 877, 892 (La. 2002). After a criminal defendant has been evaluated by the sanity commission, "[t]he issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing." LA. CODE CRIM. PROC. 647. Louisiana courts have found, however, that this article does not prohibit a defendant from waiving a contradictory hearing and stipulating to the findings of the sanitary commission. *Cummings*, 79 So.3d 386, 396 (La.App. 5 Cir. 2011); *see also State v. Darnell*, 988 So.2d 870, 877 ("Although a defendant cannot waive the requirement of a specific mental capacity finding once the issue is raised, he can submit to such a determination based on the sanity commission reports.").

Here, Jones filed a motion for a sanity commission. Ultimately, three physicians evaluated Jones and while the typical procedure would have been for the court to hold a contradictory hearing on the sanity commission's evaluations, Jones waived his right to this hearing. [doc. 8-1, p. 146]. Jones cannot now seek relief on the grounds that the trial court

9

failed to order a procedure which he waived. Accordingly, it is recommended that Jones's second claim for relief be dismissed.

### C. *Ineffective Assistance of Counsel*

In his third and final claim, Jones argues that he is entitled to relief on the basis of ineffective assistance of trial. [doc. 1-1, p. 26]. Specifically, Jones claims his trial attorney, James Ross ("Ross") was ineffective because he waived a contradictory hearing and because he did not enter on behalf of Jones a dual plea of not guilty and not guilty by reason of insanity. [doc. 1-1, p. 2].

The Sixth Amendment guarantee of effective assistance of counsel is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The benchmark for judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on an ineffective assistance of counsel claim, a petitioner must show two things. First, the petitioner must show that his attorney's performance was deficient – that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* However, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious fairness." *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). Second, the petitioner must show that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 686. Counsel's performance prejudices a defendant when

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The "standard for attorney performance is that of reasonably effective assistance." *Id.* (citing *Trapnell v. U.S.*, 725 F.2d 149, 151-52 (2d Cir. 1983)). In each case, the convicted defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland* at 690. The court must then consider under "all the circumstances" whether the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* "In making that determination, the court should keep in mind that counsel's function . . . is to make the adversarial testing process work," but recognizing "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

To show ineffective assistance of counsel on the grounds that counsel failed to advise his client to enter a dual plea of not guilty and not guilty by reason of insanity, the petitioner must show that counsel had a real indication that mental impairment was a viable defense. *Housley v. Vannoy*, 2021 WL 5104543 (W.D. La. May 27, 2021). This requires the petitioner to show more than a mere speculative possibility of a successful insanity plea. *Id.*; *see Long v. Krenke*, 138 F.3d 1160, 1161 (7th Cir. 1998). Courts have found that the petitioner cannot show this when a sanity commission deemed the petitioner competent to stand trial. *Housley*, 2021 WL 5104543

Ross's waiver of a contradictory hearing after the sanity commission's evaluation of Jones does not amount to ineffective assistance of counsel. Jones has failed to show that Ross's decision to forego the contradictory hearing was not a valid trial strategy. It is entirely possible that Ross waived the contradictory hearing because he deemed it futile given the lack of

11

evidence of incompetency and because of the sanity commission's evaluations. Although Jones made several strange comments on the night of the fire, Jones was reported to have alcohol on his breath, and Investigator Hill explained that Jones's erratic behavior only began after Investigator Hill told Jones that his explanation for how the fire started was not possible. [doc. 8, p. 9]. Moreover, two of the three members of the sanity commission, including the most recent physician to evaluate Jones, deemed Jones competent to stand trial. [doc. 8-1, p. 147]. Given this, waiver of this hearing could very well have been a tactical decision borne out of his recognition that a finding of incompetency had been exhausted.[4] Furthermore, Jones has not shown that a contradictory hearing would have changed the course of Jones's trial. Jones has not presented evidence that a contradictory hearing would have persuaded the trial court to find Jones incompetent, nor that a theoretical finding of incompetency would have led to Jones's freedom.[5]

Ross's failure to enter on Jones's behalf a dual plea of not guilty and not guilty by reason of insanity also does not rise to the level of ineffective assistance of counsel. Although Jones claims that he was not competent to stand trial, Jones has not indicated that an insanity plea would have changed the verdict. By failing to do more than speculate about a successful insanity plea, Jones has fallen short of the burden needed to prove ineffective assistance of counsel.

---

[4] It should also be pointed out that Jones himself felt that Ross had exhausted the possibility of having Jones found incompetent. At his sentencing hearing, Jones told the state court that "[Ross] spent more time sending [him] to see lunacy doctors, for whatever reason," and that Jones "spent more time seeing doctors than anything." [doc. 8-4, p. 151].

[5] As the State points out, even if the trial court had found Jones incompetent to stand trial, he would not have gone free. Rather, "he would have been referred to the Feliciana Forensic Facility for a specific period of time. Either he would have been restored to a capacity to assist counsel or not. In the former, he would have returned to a track towards his jury trial and ultimate conviction. If the latter, he would have remained housed at the forensic facility." [doc. 8, p. 17 n.14] (citing LA. CODE CRIM. PROC. § 648).

Additionally, Jones's claim must fail because the sanity commission deemed Jones competent. *See Housley*, 2021 WL 5104543, at *9 (denying a habeas corpus petitioner's ineffective assistance of counsel claim on the grounds that his attorney failed to advise him to enter a plea of not guilty by reason of insanity because counsel requested a sanity commission and that sanity commission found him competent).

Jones has not shown that Ross was ineffective as trial counsel due to his waiver of a contradictory hearing or his failure to enter a dual plea of not guilty and not guilty by reason of insanity. Accordingly, it is recommended that Jones's claim for ineffective assistance of counsel be dismissed.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Jones's petition for habeas corpus relief be DENIED.

Under the provisions of 28 U.S.C. '636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 20th day of January, 2022.

*[Signature]*
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE